UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**MONICA LOCK,**

    **Plaintiff,**

v.

**LARRY BASFORD, IN HIS OFFICIAL
CAPACITY AS STATE ATTORNEY,
FOURTEENTH JUDICIAL CIRCUIT,
STATE OF FLORIDA,**

    **Defendant.**

**CASE NO.**

_____/

## COMPLAINT

Plaintiff, MONICA LOCK, hereby sues Defendant, LARRY BASFORD, in his Official Capacity as STATE ATTORNEY, FOURTEENTH JUDICIAL CIRCUIT, STATE OF FLORIDA, and alleges:

### JURISDICTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00).

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, MONICA LOCK, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of her gender and because she reported unlawful employment practices and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, LARRY BASFORD, in his Official Capacity, has been the STATE ATTORNEY of the FOURTEENTH JUDICIAL CIRCUIT, and has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a female, began her employment with Defendant on or around January 6, 2009, and, at all times pertinent to this action, worked as an Investigator II at Defendant's office located in Panama City, Florida until her wrongful termination on January 5, 2021.

7. During her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her gender and was retaliated against after reporting discrimination and filing a charge of discrimination.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Chief Prosecutor Larry Basford, Donna Jones, Investigator II Bill Payne, and Investigator III Mike Jacobs.

9. On February 12, 2019, Basford called Plaintiff into his office at 4:40 pm. Jones was also present and Basford asserted that Plaintiff frequently left work at 4:30 pm. Basford further alleged that Plaintiff was not being a team player and was not willing to provide help when needed.

10. Plaintiff knew Basford's claim was untrue so she contacted Jones to request a meeting with Basford on February 13, 2019.  During this meeting, Plaintiff expressed her objection to Basford's accusation and stated that the allegations were not accurate.  Plaintiff then stated that his accusation was discriminatory because fellow investigator, Mike Jacobs, never worked until 5:00 p.m. and left early each day to pick his wife up from work.  Basford responded with excuses by stating "well Mike (Jacobs) only has one vehicle; we are trying to find more things for Mike to do."  This was inaccurate in that Jacobs owned more than one vehicle.

11. Moreover, over time into the 2019 time period, Plaintiff noticed that both Jacob and Bell, who were in investigator positions like Plaintiff, were receiving favorable treatment and were not being disciplined or counseled after they failed to perform "on call" duties, meaning that they were not available for these duties. Plaintiff, on the other hand, was chastised when had minor excused absences.

12. On March 4, 2019, Plaintiff was assigned to transport a black male witness to trial. Later that day, a meeting was held with all investigators present during which Plaintiff raised the issue of a double standard in transport duties. Defendant had a practice of prohibiting male investigators from transporting females but did not have a similar policy of prohibiting female investigators from transporting males.

13. Basford responded by stating that the reason for the policy was that "We have to worry about females claiming sex advances". Plaintiff responded, "What about me? What if a male comes onto me or claims something I did was inappropriate?" In response to Plaintiff's statement, Basford and the male investigators in the room laughed including without limitation Payne, Mitchell, Jacobs, Bell, and Bates.

14. On June 28, 2019, Secretary Michelle Booth observed a man masturbating in the employee gazebo. Booth approached Jacobs in his office and

4

asked him to intervene, but because of Jacobs' delay, the man was gone by the time Jacobs arrived. Jacobs's position was "Chief of Building Security" at that time. Around two months later, this same man was arrested for a home invasion, robbery, and attempted sexual battery. Jacobs was never disciplined for his lack of responsiveness to Booth's request for help.

15. On July 18, 2019, a petition was circulated within Defendant to prohibit Process Server Todd Fisher ("Fisher") from continuing service of subpoenas because of repeated incidents of untimely service. Again, no action was taken against Fisher whose failures impacted both attorneys and assistants working in Defendant's office.

16. These are but examples of the Defendant's tolerance of laziness and poor performance, including without limitation Payne throwing mail, including victim impact statements and victim letters, away, on the part of males in Defendant's workplace but not women.

17. On October 31, 2019, Plaintiff learned that Secretary Cherie Collins requested a raise from Basford but was denied the raise. Basford claimed that the budget would not permit the raise and added that he did not know what Collins's husband did for work. This statement was gender based as Basford's comment insinuated that because Collins was a married woman, she didn't have a reason to earn more money.

5

18. On June 15, 2020, Plaintiff received an email announcing that Payne was promoted to the position of Acting Chief Investigator. This was the first time Plaintiff had heard of the position as it was never announced or posted so that she could apply. Payne was an Investigator II like Plaintiff but had less work experience than her as Plaintiff has served in the same role as Payne for 12 years and held a bachelor's degree in Criminology.  Payne only had 6 years with the Defendant at the time.

19. Additionally, Plaintiff learned that after his promotion, Payne was paid $86,401 per year, although Plaintiff was more qualified for this secret promotion than Payne.

20. Around the same time that Payne was promoted, Defendant promoted another male, Charlie Woodruff, to Investigator I even though he did not meet the minimum qualifications for the position of four years of sworn investigative or law enforcement experience.

21. After Payne's promotion, and in light of the favorable treatment of males within Defendant's office, Plaintiff filed a charge of discrimination with the EEOC.  Thereafter, her life turned into a living hell and she was termination on January 5, 2021, Plaintiff's birthday.

22. Basford wrongfully terminated Plaintiff based on false, contrived or intentionally misconstrued incidents, all of which served as a cover up for the underlying intent to discriminate and retaliate against her.

23. Defendant's termination letter asserts that Plaintiff was not a "Team Player" and listed five (5) events/incidents which served as the basis for Basford's decision to fire Plaintiff.  Clearly, Defendant scoured its files to find any "dirt" it could on Plaintiff to justify her termination and used an incident in long ago as December 2014 to do so.  Regarding this incident, Basford falsely alleged that Plaintiff allegedly refused to pick up a copy of a certified conviction for an Assistant State Attorney.  Plaintiff could not pick the subpoena up without jeopardizing other cases, which Basford knew.  He also used an alleged incident that occurred in March 2016 in which Plaintiff allegedly failed to show up to work for two days without calling in for sick leave and claimed that an investigator had to visit her home. This incident was contrived and misconstrued by Basford and no investigator ever had to visit Plaintiff's home.

24. He further used an incident in February 2018 in which Plaintiff allegedly argued with Basford about transporting a witness for trial, claiming that Plaintiff exhibited a poor attitude. This is simply false as Plaintiff was never assigned to work transport for any witnesses during that trial.

7

25. Basford used an alleged incident in October 2019 in which he accused Plaintiff of refusing to transport a witness on a Sunday for a trial scheduled for the following week. This incident did occur and the selection of Plaintiff to provide this Sunday transportation, rather than her male counterparts, was in retaliation for Plaintiff's prior opposition to Defendant's discriminatory transport policy although Defendant knew that Plaintiff was actively working on a personal matter at home on the weekends. Defendant also actively discouraged weekend/Sunday transportation of witnesses because they were inefficient and wasted Defendant's resources.

26. Finally, Defendant used an alleged incident in March 2020 during the Covid-19 Pandemic where Defendant's building was operating on a reduced staffing schedule since the criminal courthouse was closed. Plaintiff chose not to go into work one day as she was not feeling well and was concerned about the possibility of having Covid-19 and spreading it to her coworkers. The allegation by Basford was that Plaintiff had a poor and combative attitude when she spoke with Executive Director Laurie Hughes and ASA Bob Pell are contrived. Plaintiff plainly notified Hughes and Pell that she was not feeling well. The conversation was not even remarkable. Basford's decision to include this incident in Plaintiff's termination letter further shows the depths to which Defendant went to try to find

something to justify Plaintiff's termination. There were also repeated incidents of male investigators not showing up to work with no repercussions.

27. Plaintiff's termination was wrongful as the alleged basis that Plaintiff was not a team player is unsupported as male investigators would outright refuse to do certain tasks in their entirety while Plaintiff set reasonable boundaries so as to not affect her own personal life and work product. The true reason for Plaintiff's termination was her gender and her opposition to Defendant's discriminatory practices, including the transport policy and the promotion of a less qualified male over Plaintiff

28. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## GENDER DISCRIMINATION

29. Paragraphs 1 through 28 are re-alleged and incorporated herein by reference.

30. This is an action against Defendant for discrimination based upon sex brought under 42 U.S.C. §2000e et seq.

31. Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of

9

Defendant who are male and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's sex.

32. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

33. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

34. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

35. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a sex-based nature and in violation of the laws set forth herein.

36. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

37. The events set forth herein led, at least in part, to Plaintiff's termination on contrived allegations.

38. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of 42 U.S.C. §2000e et seq..

39. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief and punitive damages.

## COUNT II
## RETALIATION

40. Paragraphs 1 through 28 are re-alleged incorporated herein by reference.

41. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

42. Defendant is an employer as that term is used under the applicable statutes referenced above.

43. The foregoing unlawful actions by Defendant were purposeful.

44. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

45. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

46. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

47. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

    (a) that process issue and this Court take jurisdiction over this case;

    (b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's

       obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 24th day of February, 2022.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF